**Charles Kenneth CAMPBELL, Plaintiff,**

v.

**MASSACHUSETTS MUTUAL LIFE INSURANCE COMPANY, Defendant.**

**C.A. No. H–82–486.**

United States District Court,
S.D. Texas,
Houston Division.

Aug. 22, 1986.

Earle Cobb, Jr., San Antonio, Tex., and Frank G. Jones, Fulbright & Jaworski, Houston, Tex., for plaintiff.

Reynolds, Allen & Cook, Inc., by Jeffrey A. Davis, Houston, Tex., for defendant.

## OPINION

MILTON POLLACK, Senior District Judge, Sitting by Assignment.

Massachusetts Mutual Life Insurance Company ("Mass Mutual") moves to enforce the terms of the Settlement Agreement and General Release from the plaintiff, Charles Kenneth Campbell ("Campbell") in connection therewith. That settlement resulted in dismissal of plaintiff's claims herein, with prejudice and delivery of a General Release whereby:

"1. Campbell, and his attorneys, Earle Cobb, Jr., Baker, Brown, Sharman, Wise & Parker, and J. Michael Bell, for and in consideration of (a) the sum of One Million Five Hundred Thousand and No/100 Dollars ($1,500,000) paid by and on behalf of Mass Mutual.... and (b) the recitals contained hereinafter, have for themselves, their heirs, beneficiaries, successors and assigns.... Released, Acquitted and Forever Discharge Mass Mutual, its directors, officers, agents, servants, representatives and employees, from any and all claims, demands, and causes of action, whether sounding in tort or in contract, under the statutes or the common law, which have ever accrued to them as of the date of execution of this Agreement, including, but not limited to the claims made and the claims which could have been made in the aforesaid Civil Action No. H–82–486...."

\*    \*    \*    \*    \*    \*

"7. Campbell and his attorneys, Earle Cobb, Jr., Baker, Brown, Sharman, Wise & Parker, and J. Michael Bell, do hereby assign, transfer and convey to Mass Mutual all causes of action of every kind and character, whether sounding in tort or in contract, under the statutes or the common law, they may have arising out of the Loan Commitment Transactions with Mass Mutual made the basis of the lawsuit described above bearing Civil Action No. H–82–486."

This Court, after approving the stipulated settlement, retained jurisdiction to compel compliance with the terms thereof and expressly entered on the record, with consent of the parties thereto, that the settlement "may be enforced by appropriate proceedings if there is any default in connection with it." (Trial transcript, p. 83). The power reserved to the Court to enforce the settlement agreement was a term entered into by the litigants while the litigation was pending before the Court and authorizes the Court to enforce the settlement and the release and assignment as a part thereof. *Massachusetts Casualty Ins. Co. v. Forman*, 469 F.2d 259, 260 (5th Cir.1972).

Mass Mutual here contends that a lawsuit filed by Charles Kenneth Campbell against Albert Holmes, DBA Adams & Holmes, in the District Court, 147th Judicial District, Travis County, Texas, # 366,-942, by Earle Cobb, Jr., as Attorney at Law for Campbell, is a violation of the said settlement, releases and assignment of claims prosecuted in this suit and seeks an injunction against Campbell and Cobb from further proceeding in the state court suit against Holmes who was charged by Campbell in this case and in the complaint herein as an agent of Mass Mutual in connection with the subject matter.

The Court holds that the Campbell state court suit against Holmes unequivocally violates the settlement, releases and assignment in this federal case for which Mass Mutual paid Campbell and his attorney $1,500,000. This Court will consequently consider the costs and damages sustained by Mass Mutual as a result of the default of Campbell and Cobb in failing to adhere to the terms of the settlement,

the amount, if any, to be fixed on submission on notice of proofs by affidavit of the expenses to which Campbell and Cobb have put Mass Mutual.

*Background*

This action proceeded to trial before this Court and a jury on June 25, 1984. It was a diversity suit for monetary damages for failure to supply mortgage loans on shopping centers being developed by plaintiff Campbell. Plaintiff was a developer who undertook to finance, construct, and secure tenants for four (4) separate shopping centers in the Houston area, principally tenanted by the Woolworth Company. The four centers were referred to as "Dairy Ashford," the "Humble," the "Kuykendahl," and the "290."

Campbell obtained temporary financing for the construction of the shopping centers from Texas Commerce Bank or an affiliated entity; he sought permanent mortgage financing from Mass Mutual. At different times in the latter part of 1978, and the early part of 1979, Campbell submitted four separate mortgage loan applications to Mass Mutual requesting permanent loans from Mass Mutual on each of the four subject shopping centers. The loan applications were prepared and submitted by Albert Holmes, who Campbell claimed was acting on behalf of Mass Mutual. Campbell took the witness stand and testified during the trial of this action that Holmes was the "correspondent" of Mass Mutual, that he was an "agent" and a "direct representative" of Mass Mutual and was a part of the Mass Mutual organizations.* The loans requested varied in amounts, but were, for practical purposes, about $6.5 million each. Campbell tendered 2% of the amount of the mortgage money sought to Mass Mutual as "standby deposits."

In December 1978, Mass Mutual issued two separate loan commitment agreements to Campbell through Holmes, relating, respectively, to the Dairy Ashford and the Humble shopping centers. In February 1979, Mass Mutual issued another commitment for the third shopping center, the Kuydendahl, and in March 1979 issued another commitment for the fourth shopping center, the 290. In each case the applications were processed by Albert Holmes, who obtained Campbell's signature, and in each case the commitment letter was delivered to Campbell by Albert Holmes.

Campbell had counterproposed some changes in the loan commitments, some of which were accepted, and at varying times soon after the commitments were issued and delivered to him by Holmes, Campbell signed a letter accepting the terms and conditions contained in the commitments with the modifications noted in each of the separate acceptance letters.

The projects undertaken by Campbell ran into difficulties early in 1980. In a letter dated February 19, 1980, Campbell advised Holmes, who had arranged the loan commitments, that "due to my heart attack, we have suffered a four-month slippage in the overall program for development of those [four subject] shopping centers.... We, of course, will do everything in our power to deliver leases, buildings, etc., as required by the loan commitments, however, I do feel that at the time I would be far more comfortable with a 120–day extension on each of the subject loan commitments." Campbell concluded his letter by stating the following:

"Please request from Massachusetts Mutual an extension on each of the loan commitments for a period of 120 days beyond the funding/disbursement dates shown in the commitments themselves."

The requested extension of the dates of the termination of each of the options held by Campbell was never agreed to by Mass Mutual.

The option in the commitment letters provided, in each case, that it should be "firm" until the stated expiration dates specified. Those constituted "expiration dates" of Campbell's option and required delivery by

---

* It is irrelevant for purposes hereof whether, in fact, Holmes was an "agent" of Mass Mutual. Campbell so characterized him in his testimony before the Jury and the claims tried to the Jury and their claimed incidence were the subject of the release and assignment.

Mass Mutual of the mortgage funds, providing Campbell had met the requirements imposed on him in the commitments. It was undisputed that the requirements for the exercise by Campbell of his options were not met in any case prior to the expiration dates of the options.

The evidence shows that Campbell was then offered an extension of the option dates on April 25, 1980 on terms which he did not accept. He had fallen behind in the construction of the four shopping centers and was unable to obtain the leases and put tenants in occupancy required by the commitments, and chose not to accept the termination on which extensions were available.

Suffice it to say, for present purposes, that Campbell attempted proof of default under the commitments on the part of Mass Mutual in respect of its obligations. Campbell completed his direct examination just prior to the luncheon recess.

### The Settlement

During the recess, negotiations for a disposition of the case were undertaken, and when the parties returned to Court, Mr. Cobb announced that the plaintiff had agreed to an offer of $1,500,000 net in return for a general release to be drawn up by the parties, releasing any and all claims of Campbell or any of his affiliated entities in anywise pertaining to the transactions and persons involved, including the termination of a state court action pending in the Houston, Harris County District Court involving the same subject matter, also filed by Campbell. In approving the disposition of the case, the Court observed that, due undoubtedly to Campbell's illness, "there wasn't any intentional default on your part, but nonetheless, neither was there compliance on your part." To that Mr. Campbell replied, "Right." The Court further commended the willingness of Mass Mutual to settle in the light of Campbell's inability to perform due to illness, thereby showing an enlightened understanding that there are claims that involve equitable considerations that could not survive legally. The Court thereupon approved the arrangements as fair, equitable, and conscionable.

The Court directed the parties to prepare the closing papers, including the releases. Those, the Court understands, were drafted by the Mass Mutual attorneys, transmitted to J. Michael Bell, Esq., one of the attorneys for Campbell, redrafted with new clauses added as demanded, and again submitted, examined by Bell, Cobb, and Campbell, and then executed by the three. The settlement as set out in the signed document expressly called for releases of the agents of Mass Mutual and the assignment to Mass Mutual of all claims arising out of the loan commitment transactions. [This necessarily included the claim in the amended complaint for the sum allegedly paid to Holmes, branded by Campbell as the Mass Mutual agent, etc.]. A closing then took place and the consideration was paid by Mass Mutual.

Nonetheless, having collected the consideration, Cobb, on behalf of Campbell, thereafter proceeded to file suit in the District Court in 147 Judicial District, Travis County, Texas, against Albert Holmes, the agent of Mass Mutual, for the recovery of fees paid to Holmes in connection with the commitment letters. This suit was unquestionably a default and in violation of the letter and spirit of the settlement, the assignment of all claims to Mass Mutual, and the releases and the intent and purposes thereof as submitted to and approved by the Court to terminate the disputes.

The Travis County claim asserted against Holmes was clearly intended to be assigned to Mass Mutual as clearly one "arising out of the loan commitment transactions with Mass Mutual made the basis" of the lawsuit between Mass Mutual and Campbell heard by this Court. Campbell's suit against Holmes arose out of the loan commitment transactions with Mass Mutual, and Campbell's own testimony on direct examination flatly established Holmes' relationship to the commitment transactions as the "correspondent," "agent," and "direct representative" of Mass Mutual in the matter. In his complaint in this suit, Campbell expressly sought to recover from Mass Mutual the same $267,000 paid to Albert Holmes as origination fees for the four loan application commitments. In

Campbell's complaint in this suit, he alleged as an element of damages claimed, for which the case was settled, that he had been damaged in the amount of $267,000, consisting of origination, or commitment, fees. It is unquestionable that the payment of those fees arose out of the Mass Mutual loan commitment transactions and that the cause of action that Campbell is prosecuting in Travis County state court against Holmes was part of the basis of the lawsuit between Campbell and Mass Mutual, and that claim was both assigned to Mass Mutual and embraced by the express provisions of the releases.

In sum, Campbell is pursuing, through and with Cobb, and in derogation of the settlement and the general releases and the assignment to Mass Mutual, a cause of action embraced within this lawsuit and covered by the settlement agreement. Consequently, Campbell and Cobb are in default under the terms of the settlement and acting in defiance thereof and should be, and hereby are, ordered to be enjoined from further prosecuting that suit.

The dismissal of the suit was granted in the light of the obligations undertaken by Cobb and Campbell in the settlement and this Court in the protection of its jurisdiction is clearly empowered to enforce the settlement and releases and assignment executed as incidences thereof.

The initial response heretofore filed to these enforcement proceedings were conclusory statements from Earle Cobb, Jr., served on June 27, 1986, denying that he has in any way violated the compromise and settlement agreement and asserting that Campbell has no intention of violating that agreement. Moreover, in contradiction to the evidence that Cobb elicited from Campbell on direct examination, he responds now that Albert Holmes was not an agent, representative, or employee of Mass Mutual.

His response included the veiled threat and seemingly fatuous claim that he has discussed with others the possibility of setting aside the compromise and settlement agreement on the basis of fraud by Mass Mutual.

Considering the thin reed on which the lawsuit was posited, because of the clear defaults on the part of Campbell, which might have led to a directed verdict in favor of the defendant at the close of the entire case, defaults which he readily acknowledged in response to the Court's statement at the close of the proceedings, it comes with bad grace on Cobb's part to have collected the $1,500,000, and yet to have brought suit against Holmes in breach of the settlement. In a belatedly filed additional response on behalf of Campbell and Cobb it is now urged that this Court lacks authority in the premises and that jurisdiction and venue are properly only with the Court in Texas and not in New York.

This suggestion is devoid of merit. There is no question that the defendant is seeking performance of obligations undertaken to secure the discharge of the jury and termination of a case on trial. Jurisdiction was reserved to deal with defaults in the obligations assumed; those obligations included performance of the releases and assignment of claims arising out of the loan commitments. The designation of the Court for service in the Southern District Court of Texas, by its terms and by statute, 28 U.S.C. § 295, confers the power on the designee to dispose of all further proceedings arising in the matters submitted to him under the designation.

Mr. Campbell has recently moved for the substitution of counsel to eliminate Mr. Cobb from the case because he "is unable to efficiently handle" a Houston case. That application, at this time, is denied pending the performance by Mr. Cobb of the settlement procured and undertaken and the consideration of default in his obligations thereunder.

The jurisdiction of the Court over counsel is essential in the circumstances, particularly because the defendant charges him with breaches of the obligations of the settlement which he arranged and seeks appropriate sanctions. However, Frank G. Jones, the proposed substitute counsel will be recognized herein as additional of coun-

sel of the plaintiff. J. Michael Bell Esq. is relieved of further participation herein.

The motion of the defendant to enforce the settlement is accordingly granted and the plaintiff Campbell and his attorney Earle Cobb are enjoined from violating and continuing to violate the releases and assignment made part of the settlement by proceeding in derogation thereof in the state court suit mentioned herein.

The defendant may, on notice, present its claim for appropriate sanctions by affidavits to be filed herein within 20 days from the date hereof and responsive papers shall be filed within 10 days thereafter, after which time the matter is deemed submitted.